# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANDREW R. LOPEZ, | ) 1:12-cv—01172-AWI-BAM-HC |
| | ) |
|     Petitioner, | ) FINDINGS AND RECOMMENDATIONS TO |
| | ) DISMISS THE PETITION WITHOUT |
| | ) LEAVE TO AMEND (DOC. 1) |
|  v. | ) |
| | ) FINDINGS AND RECOMMENDATIONS TO |
| EDMUND G. BROWN, | ) DECLINE TO ISSUE A CERTIFICATE OF |
| | ) APPEALABILITY AND TO DIRECT THE |
|     Respondent. | ) CLERK TO CLOSE THE CASE |
| | ) |
| | ) OBJECTIONS DEADLINE:  THIRTY |
| | ) (30) DAYS |

Petitioner is a state prisoner proceeding pro se and in forma pauperis with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.  The matter has been referred to the Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1) and Local Rules 302 and 304.  Pending before the Court is the petition, which was filed on July 16, 2012.

I.  Screening the Petition

Rule 4 of the Rules Governing § 2254 Cases in the United States District Courts (Habeas Rules) requires the Court to make a preliminary review of each petition for writ of habeas corpus. The Court must summarily dismiss a petition "[i]f it plainly

1

appears from the petition and any attached exhibits that the
petitioner is not entitled to relief in the district court...."
Habeas Rule 4; O'Bremski v. Maass, 915 F.2d 418, 420 (9th Cir.
1990); see also Hendricks v. Vasquez, 908 F.2d 490 (9th Cir.
1990).  Habeas Rule 2(c) requires that a petition 1) specify all
grounds of relief available to the Petitioner; 2) state the facts
supporting each ground; and 3) state the relief requested.
Notice pleading is not sufficient; rather, the petition must
state facts that point to a real possibility of constitutional
error.  Rule 4, Advisory Committee Notes, 1976 Adoption;
O'Bremski v. Maass, 915 F.2d at 420 (quoting Blackledge v.
Allison, 431 U.S. 63, 75 n.7 (1977)).  Allegations in a petition
that are vague, conclusory, or palpably incredible are subject to
summary dismissal.  Hendricks v. Vasquez, 908 F.2d at 491.

Further, the Court may dismiss a petition for writ of habeas
corpus either on its own motion under Habeas Rule 4, pursuant to
the respondent's motion to dismiss, or after an answer to the
petition has been filed.  Advisory Committee Notes to Habeas Rule
8, 1976 Adoption; see, Herbst v. Cook, 260 F.3d 1039, 1042-43
(9th Cir. 2001).

A petition for habeas corpus should not be dismissed without
leave to amend unless it appears that no tenable claim for relief
can be pleaded were such leave granted.  Jarvis v. Nelson, 440
F.2d 13, 14 (9th Cir. 1971).

II.  Background

Petitioner alleges that he is an inmate of the California
State Prison at Corcoran, California (CSP-COR), serving a
sentence of seventeen years to life imposed in 1992 for a

2

conviction of second degree murder sustained in the Stanislaus
County Superior Court.   Petitioner challenges a decision of
California's Board of Parole Hearings (BPH) made after a hearing
held on December 7, 2009.

Petitioner alleges the following claims in the petition:  1)
the state court's failure to issue orders necessary to enable
Petitioner to procure a copy of his "habeas record" (pet. 4) in
post-conviction relief proceedings, and the denial of his
requests for counsel, were constitutionally inadequate procedures
that denied him access to the courts and violated his rights to
due process and to the equal protection of the "some evidence"
standard; 2) the BPH disregarded a previous order of this Court
issued in 2009 to afford a timely, constitutionally adequate
parole suitability hearing and thereby violated Petitioner's
right to due process by a) depriving Petitioner of a meaningful
opportunity to be heard regarding a new psychological evaluation
and by not reporting and/or documenting errors in a 2009
psychological report, b) accepting the 2009 report in evidence
and relying on it in making a decision, c) allowing a 1992 "POR"
into evidence and relying on it despite its unreliability, d)
denying parole in the absence of "some evidence" to substantiate
its finding that Petitioner would pose a risk to public safety or
current dangerousness, in violation of due process as well as
California law, e) ignoring evidence that contradicted its
findings, f) depriving Petitioner of his protected liberty
interests in parole in violation of Cal. Pen. Code § 3041, g)
failing to set a parole release date even though both the minimum
and maximum release dates had passed, and h) relying solely on

unchanging factors of the commitment offense and past substance abuse despite evidence of no violence or substance abuse during incarceration; 3) the BPH's denial of parole when the maximum and minimum parole release dates had passed violated the Eighth Amendment's prohibition of cruel and unusual punishment; 4) the BPH's application to Petitioner of Proposition 9, which increases the minimum parole deferral period and the default maximum deferral period and limits the BPH's discretion to reduce the maximum deferral period, violates the prohibition against ex post facto laws because Petitioner was convicted before it took effect; and 5) parole was denied on the basis of "underground discriminatory practice of SHU status" (id. at 8). (Pet. 1-52.)

Petitioner requests that he be released and the "excess" (pet. at 52) time spent in prison since the parole hearing held on August 1, 2007, which was previously declared unconstitutional by this Court, be deducted from his parole period; this Court's earlier order regarding a new hearing be enforced; the 1992 probation officer's report and the 2009 psychological reports, as well as all references to them, be expunged; the application of Proposition 9 to Petitioner be prohibited; the California Department of Corrections and Rehabilitation (CDCR) and the BPH be ordered to cease the discriminatory practice of denying parole to life inmates because of segregated placement; and an evidentiary hearing be ordered.

Reference to the transcript of the parole suitability hearing held before a panel of commissioners of the BPH on December 7, 2009, reflects that Petitioner appeared before a panel of commissioners of the BPH with counsel, who advocated on

4

1  his behalf; further, Petitioner was given an opportunity to
2  correct or clarify the record, answered questions from the
3  commissioners under oath, and made a personal statement regarding
4  his suitability.  (Doc. 1-1, 130-223, 134, 138, 149-205, 208-14,
5  214-221.)  Petitioner stated that his counsel had reviewed with
6  him the procedures and his rights concerning the parole hearings,
7  and he confirmed that Petitioner or his counsel were given all
8  the documentation on the panel's checklist.  (Id. at 139-40, 153-
9  54.)  Counsel objected to use of the 2009 psychological report
10 because it was prepared so close to the time of the hearing, and
11 because Petitioner declined to participate in the review process,
12 he had not had a chance to clarify or address the clinician's
13 concerns.  (Id. at 141-44.)  There was also objection to use of
14 the probation officer's report used at Petitioner's sentencing
15 because Petitioner did not have an opportunity to read it before
16 the judge approved it, and to Petitioner's having been validated
17 as a prison gang member.  (Id. at 145-46.)

18     Petitioner was present when the panel announced the reasons
19 for its finding that Petitioner was unsuitable for parole and
20 would not be considered again for four years because he would
21 pose an unreasonable risk of danger to society or a threat to
22 public safety if released from prison, which included
23 Petitioner's extensive and serious misconduct while in prison,
24 which caused concern that Petitioner could not follow the rules
25 and conditions of parole; the commitment offense, in which
26 Petitioner inflicted without any apparent motive thirteen stab
27 wounds, including wounds to the back of a vulnerable, unarmed,
28 intoxicated victim; Petitioner's criminal history and unstable

social history; his failure on previous grants of probation and parole; a psychological report of 2009 which was not totally supportive of release; failure to participate sufficiently in beneficial self-help concerning substance abuse; and his attitude towards the crime, including denying culpability for the offense and lack of insight into the factors causing his criminal conduct. (Id. at 224-34, 205-07.)

III.   Denial of Access to the Courts

Because the petition was filed after April 24, 1996, the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), the AEDPA applies in this proceeding. Lindh v. Murphy, 521 U.S. 320, 327 (1997), cert. denied, 522 U.S. 1008 (1997); Furman v. Wood, 190 F.3d 1002, 1004 (9th Cir. 1999).

A district court may entertain a petition for a writ of habeas corpus by a person in custody pursuant to the judgment of a state court only on the ground that the custody is in violation of the Constitution, laws, or treaties of the United States. 28 U.S.C. §§ 2254(a), 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375 n.7 (2000); Wilson v. Corcoran, 562 U.S. –, –, 131 S.Ct. 13, 16 (2010) (per curiam).

Title 28 U.S.C. § 2254 provides in pertinent part:

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an

unreasonable determination of the facts in light
of the evidence presented in the State court
proceeding.

Clearly established federal law refers to the holdings, as
opposed to the dicta, of the decisions of the Supreme Court as of
the time of the relevant state court decision. Cullen v.
Pinholster, - U.S. -, 131 S.Ct. 1388, 1399 (2011); Lockyer v.
Andrade, 538 U.S. 63, 71 (2003); Williams v. Taylor, 529 U.S.
362, 412 (2000). It is thus the governing legal principle or
principles set forth by the Supreme Court at the pertinent time.
Lockyer v. Andrade, 538 U.S. 71-72.

To the extent that Petitioner complains of the state court's
procedures of failing to order prison authorities to copy a
record of Petitioner's parole proceedings for the purpose of
permitting Petitioner to bring a petition for writ of habeas
corpus, the Court notes preliminarily that the documentation
submitted in support of the petition reveals that Petitioner
received a copy of the proceedings, and the allegedly offensive
prison rule or policy that limited the provision of copies was
repealed. (Id. at 46-50.) It thus appears that the claim is
moot in the sense that this Court could not order any effective
relief.

Further, Petitioner has not cited any authority, and the
Court is aware of none, that Petitioner is entitled to counsel in
a state court habeas proceeding for review of a denial of parole.

In any event, Petitioner's claim is not cognizable in this
proceeding. Federal habeas relief is not available to retry a
state issue that does not rise to the level of a federal
constitutional violation. Wilson v. Corcoran, 562 U.S. — , 131

7

1  S.Ct. 13, 16 (2010); Estelle v. McGuire, 502 U.S. 62, 67-68

2  (1991).  Alleged errors in the application of state law are not

3  cognizable in federal habeas corpus.  Souch v. Schiavo, 289 F.3d

4  616, 623 (9th Cir. 2002).  Thus, it is established that federal

5  habeas relief is not available to redress procedural errors in

6  the state collateral review process.  Ortiz v. Stewart, 149 F.3d

7  923, 939 (9th Cir. 1998) (claim concerning the alleged bias of a

8  judge in a second post-conviction proceeding for relief);

9  Carriger v. Stewart, 95 F.3d 755, 763 (9th Cir. 1996), vacated on

10  other grounds, Carriger v. Stewart, 132 F.3d 463 (1997) (Brady

11  claim in post-conviction proceedings); Franzen v. Brinkman, 877

12  F.2d 26, 26 (9th Cir. 1989) (claim that a state court's delay in

13  deciding a petition for post-conviction relief violated due

14  process rights).

15      Further, to the extent that Petitioner contends that the

16  rule obstructed his access to the courts, Petitioner's complaint

17  concerns not matters that affect the legality or duration of his

18  confinement, but rather the conditions of his confinement.  It is

19  established that a habeas corpus petition is the correct method

20  for a prisoner to challenge the legality or duration of his

21  confinement.  Badea v. Cox, 931 F.2d 573, 574 (9th Cir. 1991)

22  (quoting Preiser v. Rodriquez, 411 U.S. 475, 485 (1973));

23  Advisory Committee Notes to Habeas Rule 1, 1976 Adoption.  In

24  contrast, a civil rights action pursuant to 42 U.S.C. § 1983 is

25  the proper method for a prisoner to challenge the conditions of

26  that confinement.  McCarthy v. Bronson, 500 U.S. 136, 141-42

27  (1991); Preiser, 411 U.S. at 499; Badea, 931 F.2d at 574;

28  Advisory Committee Notes to Habeas Rule 1, 1976 Adoption.

Therefore, Petitioner's claim concerning access to the courts must be dismissed.  Because the defect in Petitioner's pleading is based on the nature of the claim, Petitioner could not state a tenable claim of denial of access to the courts if leave to amend were granted.

Accordingly, it will be recommended that the claim be dismissed without leave to amend.  Petitioner may bring his claim by filing a civil rights complaint pursuant to 42 U.S.C. § 1983.

IV.   Absence of Some Evidence to Support the Decision

A.   Due Process

To the extent that Petitioner complains that the absence of "some evidence" to support the BPH's finding violated his right to due process of law, Petitioner fails to state a tenable due process claim.

The Supreme Court has characterized as reasonable the decision of the Court of Appeals for the Ninth Circuit that California law creates a liberty interest in parole protected by the Fourteenth Amendment Due Process Clause, which in turn requires fair procedures with respect to the liberty interest. Swarthout v. Cooke, 562 U.S. –, 131 S.Ct. 859, 861-62 (2011).

However, the procedures required for a parole determination are the minimal requirements set forth in Greenholtz v. Inmates of Neb. Penal and Correctional Complex, 442 U.S. 1, 12 (1979).[1]

---

[1] In Greenholtz, the Court held that a formal hearing is not required with respect to a decision concerning granting or denying discretionary parole; it is sufficient to permit the inmate to have an opportunity to be heard and to be given a statement of reasons for the decision made. Id. at 16.  The decision maker is not required to state the evidence relied upon in coming to the decision. Id. at 15-16.  The Court reasoned that because there is no constitutional or inherent right of a convicted person to be released conditionally before expiration of a valid sentence, the liberty interest in discretionary parole is only conditional and thus differs from the liberty

9

Swarthout v. Cooke, 131 S.Ct. 859, 862.   In Swarthout, the Court

rejected inmates' claims that they were denied a liberty interest

because there was an absence of "some evidence" to support the

decision to deny parole.   The Court stated:

> There is no right under the Federal Constitution
> to be conditionally released before the expiration of
> a valid sentence, and the States are under no duty
> to offer parole to their prisoners.   (Citation omitted.)
> When, however, a State creates a liberty interest,
> the Due Process Clause requires fair procedures for its
> vindication-and federal courts will review the
> application of those constitutionally required procedures.
> In the context of parole, we have held that the procedures
> required are minimal.   In Greenholtz, we found
> that a prisoner subject to a parole statute similar
> to California's received adequate process when he
> was allowed an opportunity to be heard and was provided
> a statement of the reasons why parole was denied.
> (Citation omitted.)

Swarthout, 131 S.Ct. 859, 862.   The Court concluded that the

petitioners had received the process that was due as follows:

> They were allowed to speak at their parole hearings
> and to contest the evidence against them, were afforded
> access to their records in advance, and were notified
> as to the reasons why parole was denied....
>
> That should have been the beginning and the end of
> the federal habeas courts' inquiry into whether
> [the petitioners] received due process.

Swarthout, 131 S.Ct. at 862.   The Court in Swarthout expressly

noted that California's "some evidence" rule is not a substantive

federal requirement, and correct application of California's

"some evidence" standard is not required by the federal Due

---

interest of a parolee.   Id. at 9.   Further, the discretionary decision to
release one on parole does not involve retrospective factual determinations,
as in disciplinary proceedings in prison; instead, it is generally more
discretionary and predictive, and thus procedures designed to elicit specific
facts are unnecessary.   Id. at 13.   In Greenholtz, the Court held that due
process was satisfied where the inmate received a statement of reasons for the
decision and had an effective opportunity to insure that the records being
considered were his records, and to present any special considerations
demonstrating why he was an appropriate candidate for parole.   Id. at 15.

1   Process Clause. Id. at 862-63.

2       Here, Petitioner asks this Court to engage in the very type

3   of analysis foreclosed by Swarthout. Petitioner does not state

4   facts that point to a real possibility of constitutional error or

5   that otherwise would entitle Petitioner to habeas relief because

6   California's "some evidence" requirement is not a substantive

7   federal requirement. Review of the record for "some evidence" to

8   support the denial of parole is not within the scope of this

9   Court's habeas review under 28 U.S.C. § 2254.

10      Petitioner cites state law concerning the appropriate weight

11  or significance to be given to evidence that was before the BPH.

12  Petitioner further contends that the BPH denied due process by

13  relying on the commitment offense and past substance abuse

14  instead of weighing other evidence that tended to show that

15  Petitioner had not committed violent offenses or engaged in

16  substance abuse in prison. To the extent that Petitioner's claim

17  or claims rest on state law, they are not cognizable on federal

18  habeas corpus. Federal habeas relief is not available to retry a

19  state issue that does not rise to the level of a federal

20  constitutional violation. Wilson v. Corcoran, 562 U.S. — , 131

21  S.Ct. 13, 16 (2010); Estelle v. McGuire, 502 U.S. 62, 67-68

22  (1991). Alleged errors in the application of state law are not

23  cognizable in federal habeas corpus. Souch v. Schiavo, 289 F.3d

24  616, 623 (9th Cir. 2002).

25      Accordingly, Petitioner's due process claim must be

26  dismissed.

27      Because the defect in the claim proceeds from the nature of

28  the claim and not a dearth of factual allegations, it does not

appear that Petitioner could state a tenable due process claim concerning the evidence if leave to amend were granted.  Thus, it will be recommended that the claim be dismissed without leave to amend.

### B.   Equal Protection

Petitioner alleges generally that the failure to make or order copies of the record of his parole proceedings for him deprived him of the equal protection of the laws.

Prisoners are protected under the Equal Protection Clause of the Fourteenth Amendment from invidious discrimination based on race, religion, or membership in a protected class subject to restrictions and limitations necessitated by legitimate penological interests.  Wolff v. McDonnell, 418 U.S. 539, 556 (1974); Bell v. Wolfish, 441 U.S. 520, 545-46 (1979).  The Equal Protection Clause essentially directs that all persons similarly situated should be treated alike.  City of Cleburne, Texas v. Cleburne Living Center, 473 U.S. 432, 439 (1985).  Violations of equal protection are shown when a respondent intentionally discriminates against a petitioner based on membership in a protected class, Lee v. City of Los Angeles, 250 F.3d 668, 686 (9th Cir. 2001), or when a respondent intentionally treats a member of an identifiable class differently from other similarly situated individuals without a rational basis, or a rational relationship to a legitimate state purpose, for the difference in treatment, Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000); Engquist v. Oregon Department of Agriculture, 553 U.S. 591, 601-02 (2008).

Here, Petitioner has not alleged that membership in a

protected class was the basis of any alleged discrimination.
Petitioner has not alleged that there was any invidiousness or
any intentional treatment of Petitioner that was different from
treatment of any similarly situated individuals, or that any such
treatment lacked a rational basis, or a rational relationship to
a legitimate state purpose, for the difference in treatment.
Instead, Petitioner premises his claim upon the absence of
evidence to support the suitability decision.

It may be that Petitioner is arguing that he was denied the
equal protection of the laws because under the circumstances of
his commitment offense and his personal history, he presented no
risk to society, and yet he was denied release even though he had
served over twenty years for second degree murder.  Petitioner
may be attempting to argue that he has served a longer sentence
than some prisoners who have been convicted of more serious
offenses.

However, Petitioner has not alleged or shown that with
respect to all pertinent factors of parole suitability, he is
similarly situated with others who may have served less time
after conviction of murder.

Legislation that discriminates based on characteristics
other than race, alienage, national origin, and sex is presumed
to be valid and need only be rationally related to a legitimate
state interest in order to survive an equal protection challenge.
City of Cleburne, 473 U.S. at 440.  Prisoners who are eligible
for parole are not a suspect class entitled to heightened
scrutiny.  See, Mayner v. Callahan, 873 F.2d 1300, 1302 (9th Cir.
1989) (prisoners not a suspect class).  Furthermore, public

1  safety is a legitimate state interest.  <u>See</u>, <u>Webber v. Crabtree</u>,

2  158 F.3d 460, 461 (9th Cir. 1998) (health and safety are

3  legitimate state interests).  Under California law, a prisoner's

4  suitability for parole is dependent upon the effect of the

5  prisoner's release on the public safety.  Cal. Pen. Code

6  § 3041(b) (mandating release on parole unless the public safety

7  requires a more lengthy period of incarceration).  California's

8  parole system is thus both intended and applied to promote the

9  legitimate state interest of public safety.  <u>See</u>, <u>Webber v.</u>

10 <u>Crabtree</u>, 158 F.3d at 461.  Petitioner has not shown or even

11 suggested how the decision in the present case could have

12 constituted a violation of equal protection of the laws.

13      Further, the Court notes that parole consideration is

14 discretionary and does not provide the basis of a fundamental

15 right.  <u>Mayner v. Callahan</u>, 873 F.2d 1300, 1301-02 (9th Cir.

16 1989).

17      The Court concludes that Petitioner's claim should be

18 dismissed.

19      The full record of Petitioner's parole proceedings is before

20 the Court and reveals no facts to support a conclusion that if

21 leave to amend were granted, Petitioner could state a tenable

22 equal protection claim.  Thus it will be recommended that

23 Petitioner's equal protection claim be dismissed without leave to

24 amend.

25      V.  <u>Miscellaneous Due Process Claims</u>

26      In a previous proceeding in this Court, the BPH was ordered

27 in 2009 to give Petitioner a new parole hearing because

28 Petitioner had been ill on the date of a parole hearing that was

14

held in August 2007.  (Pet., doc. 1, 22, 143-54.)  Petitioner

argues that this Court's order was disregarded because the

rehearing he received pursuant to that direction, namely, the

hearing held in December 2009 that is challenged in this

proceeding, violated his right to due process of law in various

respects.

Petitioner complains that he was deprived of a meaningful

opportunity to be heard regarding a psychological evaluation in

which he refused to participate because it was set about two

weeks before, and thus too close to, the parole rehearing date as

it was initially set.  However, there is no federally recognized

right to have a psychological evaluation provided at any

particular time or with any particular period of notice in

relation to a parole hearing.  Further, Petitioner has not shown

that any prejudice resulted from the timing of the evaluation, in

which Petitioner declined to participate.

Petitioner further contends that the BPH failed to report or

document errors in the report of the 2009 psychological

evaluation and erred in relying on it because it was unreliable.

Petitioner complains that the BPH ignored evidence that

contradicted its findings, wrongly considered and relied upon the

unreliable report of the probation officer that was prepared for

the sentencing hearing held in connection with the commitment

offense, and wrongly relied on the unchanging factor of the

commitment offense and Petitioner's history of criminal behavior

and substance abuse.  With respect to these allegations,

Petitioner is asking this Court to review the state court's

application of the "some evidence" standard, which is not within

the scope of this Court's review in a proceeding pursuant to § 2254.

To the extent the Petitioner relies on state law in connection with his contention that the finding of unsuitability was not supported by some evidence, Petitioner likewise fails to state a claim that is cognizable in this proceeding.

With respect to procedural due process, the record reflects that Petitioner or his counsel were given access to the pertinent records in advance, were allowed to speak at the hearing and to contest the evidence against Petitioner, and Petitioner was notified as to the reasons why parole was denied.  Thus, Petitioner received all process that was due.

Accordingly, it will be recommended that these claims be dismissed without leave to amend.

VI.   The Passing of Petitioner's Release Dates

Petitioner argues that his right to due process of law was violated by the failure to release him on parole even though both his minimum and maximum release dates had passed.  Petitioner argues that this denied him his liberty interest guaranteed by Cal. Pen. Code § 3041.

To the extent that Petitioner relies on state law, Petitioner's claim should be dismissed without leave to amend as not cognizable in this proceeding.

Petitioner contends that the failure to release him violated the Eight Amendment's prohibition of cruel and unusual punishment.

It is established that there is no right under the Federal Constitution to be conditionally released before the expiration

16

of a valid sentence, and the states are under no duty to offer parole to their prisoners. <u>Swarthout v. Cooke</u>, 131 S.Ct. at 862. A criminal sentence that is "grossly disproportionate" to the crime for which a defendant is convicted may violate the Eighth Amendment. <u>Lockyer v. Andrade</u>, 538 U.S. 63, 72 (2003); <u>Harmelin v. Michigan</u>, 501 U.S. 957, 1001 (1991) (Kennedy, J., concurring); <u>Rummel v. Estelle</u>, 445 U.S. 263, 271 (1980). Outside of the capital punishment context, the Eighth Amendment prohibits only sentences that are extreme and grossly disproportionate to the crime. <u>United States v. Bland</u>, 961 F.2d 123, 129 (9th Cir. 1992) (quoting <u>Harmelin v. Michigan</u>, 501 U.S. 957, 1001, (1991) (Kennedy, J., concurring)). Such instances are "exceedingly rare" and occur in only "extreme" cases. <u>Lockyer v. Andrade</u>, 538 U.S. at 72-73; <u>Rummel</u>, 445 U.S. at 272. So long as a sentence does not exceed statutory maximums, it will not be considered cruel and unusual punishment under the Eighth Amendment. See <u>United States v. Mejia-Mesa</u>, 153 F.3d 925, 930 (9th Cir.1998); <u>United States v. McDougherty</u>, 920 F.2d 569, 576 (9th Cir. 1990).

In California, Petitioner's offense, second degree murder, is generally punished by imprisonment in the state prison for a term of fifteen (15) years to life. Cal. Pen. Code § 190(a). Pursuant to California law, it is established that an indeterminate life sentence is in legal effect a sentence for the maximum term of life. <u>People v. Dyer</u>, 269 Cal.App.2d 209, 214 (1969). Generally, a convicted person serving an indeterminate life term in state prison is not entitled to release on parole until he is found suitable for such release by the Board of Parole Hearings (previously, the Board of Prison Terms). Cal.

17

1   Pen. Code § 3041(b); Cal. Code of Regs., tit. 15, § 2402(a).

2   Under California's Determinate Sentencing Law, an inmate such as

3   Petitioner who is serving an indeterminate sentence for murder

4   may serve up to life in prison, but he does not become eligible

5   for parole consideration until the minimum term of confinement is

6   served.   In re Dannenberg, 34 Cal.4th 1061, 1078 (2005).   The

7   actual confinement period of a life prisoner is determined by an

8   executive parole agency.   Id. (citing Cal. Pen. Code § 3040).

9       Thus, Petitioner's sentence has not exceeded the statutory

10  maximum.

11      Accordingly, Petitioner has not stated facts that would

12  entitle him to relief in a proceeding pursuant to § 2254 under

13  the Eighth Amendment's prohibition against cruel and unusual

14  punishment.   In view of the pertinent state statutory scheme, it

15  does not appear that Petitioner could allege a tenable cruel and

16  unusual punishment claim.

17      Therefore, it will be recommended that Petitioner's cruel

18  and unusual punishment claim be dismissed without leave to amend.

19      VII.   Ex Post Facto

20      Petitioner argues that Proposition 9 was applied to him in

21  violation of the prohibition against ex post facto laws.

22      Petitioner's contention concerns California's Proposition 9,

23  the "Victims' Bill of Rights Act of 2008: Marsy's Law," which on

24  November 4, 2008, effected an amendment of Cal. Pen. Code

25  § 3041.5(b)(3) that resulted in a lengthening of the periods

26  between parole suitability hearings.

27      The Constitution provides, "No State shall... pass any... ex

28  post facto Law."   U.S. Const. art I, § 10.   The Ex Post Facto

18

Clause prohibits any law which: 1) makes an act done before the passing of the law, which was innocent when done, criminal; 2) aggravates a crime and makes it greater than it was when it was committed; 3) changes the punishment and inflicts a greater punishment for the crime than when it was committed; or 4) alters the legal rules of evidence and requires less or different testimony to convict the defendant than was required at the time the crime was committed.  Carmell v. Texas, 529 U.S. 513, 522 (2000).  Application of a state regulation retroactively to a defendant violates the Ex Post Facto Clause if the new regulations create a "sufficient risk" of increasing the punishment for the defendant's crimes.  Himes v. Thompson, 336 F.3d 848, 854 (9th Cir. 2003) (citing Cal. Department of Corrections v. Morales, 514 U.S. 499, 509 (1995)).  When the rule or statute does not by its own terms show a significant risk, the claimant must demonstrate, by evidence drawn from the rule's practical implementation by the agency charged with exercising discretion, that its retroactive application will result in a longer period of incarceration than under the earlier rule. Garner v. Jones, 529 U.S. 244, 250, 255 (2000).

Previous amendments to Cal. Pen. Code § 3041.5, which initiated longer periods of time between parole suitability hearings, have been upheld against challenges that they violated the Ex Post Facto Clause.  See, e.g., California Department of Corrections v. Morales, 514 U.S. 499, 509 (1995); Watson v. Estelle, 886 F.2d 1093, 1097-98 (9th Cir. 1989).  Similarly, it has been held that a state law permitting the extension of intervals between parole consideration hearings for all prisoners

1  serving life sentences from three to eight years did not violate

2  the Ex Post Facto Clause where expedited parole review was

3  available upon a change of circumstances or receipt of new

4  information warranting an earlier review, and where there was no

5  showing of increased punishment.  Under such circumstances, there

6  was no significant risk of extending a prisoner's incarceration.

7  Garner v. Jones, 529 U.S. at 249.

8      In Gilman v. Schwarzenegger, 638 F.3d 1101, 1109-11 (9th

9  Cir. 2011), the Ninth Circuit reversed a grant of injunctive

10 relief to plaintiffs in a class action seeking to prevent the

11 board from enforcing Proposition 9's amendments that defer parole

12 consideration.  The court noted that the changes wrought by

13 Proposition 9 were noted to be more extensive than those before

14 the Court in Morales and Garner; however, advanced hearings,

15 which would remove any possibility of harm, were available upon a

16 change in circumstances or new information.  Id.  The Court

17 concluded that in the absence of facts in the record from which

18 it might be inferred that Proposition 9 created a significant

19 risk of prolonging Plaintiffs' incarceration, the plaintiffs had

20 not established a likelihood of success on the merits on the ex

21 post facto claim.  Id. at 1110-11.

22     This Court may take judicial notice of court records.  Fed.

23 R. Evid. 201(b); United States v. Bernal-Obeso, 989 F.2d 331, 333

24 (9th Cir. 1993); Valerio v. Boise Cascade Corp., 80 F.R.D. 626,

25 635 n.1 (N.D. Cal. 1978), aff'd, 645 F.2d 699 (9th Cir. 1981).

26     The Court takes judicial notice of the docket and specified

27 orders in the class action pending in this district, Gilman v.

28 Fisher, 2:05-cv-00830-LKK-GGH, including the order granting

1  motion for class certification filed on March 4, 2009 (Doc. 182,

2  9:7-15), which indicates that the Gilman class is made up of

3  California state prisoners who 1) have been sentenced to a term

4  that includes life, 2) are serving sentences that include the

5  possibility of parole, 3) are eligible for parole, and 4) have

6  been denied parole on one or more occasions.  The docket further

7  reflects that the Ninth Circuit affirmed the order certifying the

8  class.  (Docs. 257, 258.)  The Court also takes judicial notice

9  of the order of May 31, 2012, in which the Court described the

10  case as including in claim 8 challenges to Proposition 9's

11  deferral provisions based on the Ex Post Facto Clause, and the

12  Court denied a motion for judgment on the pleadings with respect

13  to that claim.  (Doc. 420, 1-2.)  The Court described the class

14  concerning claim 8 as "all California state prisoners who have

15  been sentenced to a life term with the possibility of parole for

16  an offense that occurred before November 4, 2008."  (Id. at 2.)

17      Although Petitioner ultimately seeks release from custody,

18  resolution of Petitioner's claim might well involve the

19  scheduling of Petitioner's next suitability hearing and the

20  invalidation of state procedures used to deny parole suitability,

21  matters removed from the fact or duration of confinement.  Such

22  types of claims have been held to be cognizable under 42 U.S.C.

23  § 1983 as claims concerning conditions of confinement.  Wilkinson

24  v. Dotson, 544 U.S. 74, 82 (2005).  Thus, they may fall outside

25  the core of habeas corpus relief.  See, Preiser v. Rodriquez, 411

26  U.S. 475, 485-86 (1973); Nelson v. Campbell, 541 U.S. 637, 643

27  (2004); Muhammad v. Close, 540 U.S. 749, 750 (2004).

28      Further, the relief Petitioner requests overlaps with the

relief requested in the <u>Gilman</u> class action.  It is established

that a plaintiff who is a member of a class action for equitable

relief from prison conditions may not maintain an individual suit

for equitable relief concerning the same subject matter.

<u>Crawford v. Bell</u>, 599 F.2d 890, 891-92 (9th Cir. 1979).  This is

because it is contrary to the efficient and orderly

administration of justice for a court to proceed with an action

that would possibly conflict with or interfere with the

determination of relief in another pending action, which is

proceeding and in which the class has been certified.

Here, Petitioner's own allegations reflect that he qualifies

as a member of the class in <u>Gilman</u>.  The court in <u>Gilman</u> has

jurisdiction over the same subject matter and may grant the same

relief.  A court has inherent power to control its docket and the

disposition of its cases with economy of time and effort for both

the court and the parties.  <u>Landis v. North American Co.,</u> 299

U.S. 248, 254-255 (1936); <u>Ferdik v. Bonzelet</u>, 963 F.2d 1258, 1260

(9th Cir. 1992).  In the exercise of its inherent discretion,

this Court concludes that dismissal of Petitioner's ex post facto

claim in this action is appropriate and necessary to avoid

interference with the orderly administration of justice.  <u>Cf.</u>,

<u>Crawford v. Bell</u>, 599 F.2d 890, 892-93; <u>see</u> <u>Bryant v. Haviland</u>,

2011 WL 23064, *2-*5 (E.D.Cal. Jan. 4, 2011).

A petition for habeas corpus should not be dismissed without

leave to amend unless it appears that no tenable claim for relief

can be pleaded were such leave granted.  <u>Jarvis v. Nelson</u>, 440

F.2d 13, 14 (9th Cir. 1971).  In view of the allegations of the

petition and the pendency of the <u>Gilman</u> class action, amendment

1  of the petition with respect to the ex post facto claim would be
2  futile.

3      Accordingly, it will be recommended that Petitioner's ex
4  post facto claim be dismissed without leave to amend.

5      VIII.   <u>Discrimination</u>

6      Petitioner alleges generally that parole was denied on the
7  basis of "underground discriminatory practice of SHU status."
8  (Pet. 8.)

9      This claim is unclear.

10      The matter of assigning suspected gang affiliates to SHU is
11  not disciplinary, but rather is an administrative strategy to
12  preserve order in the prison and protect safety of all inmates,
13  matters essentially within the administrative discretion of
14  prison authorities.  <u>Munoz v. Rowland</u>, 104 F.3d 1096, 1098 (9th
15  Cir. 1997).  Petitioner has alleged no facts that would indicate
16  that the BPH denied parole based on Petitioner's status as an
17  administratively segregated inmate who had been validated as a
18  gang member.  Instead, the statement of reasons for the BPH's
19  findings reflects that the BPH considered Petitioner's efforts to
20  engage in programming in the context of his segregated housing.
21  The BPH concluded that Petitioner continued to display negative
22  behavior while incarcerated, and as a result was placed in
23  special housing where program participation was limited and the
24  ability to demonstrate parole readiness was hampered.  The BPH
25  noted that Petitioner did complete some self-help programming
26  despite having been in the security housing unit, which was
27  commendable; however, the BPH concluded that Petitioner had not
28  sufficiently participated in beneficial self-help, specifically,

1   substance abuse programming. (Pet., doc. 1-1, 229-34.)

2       The record precludes Petitioner from being able to state a

3   tenable claim of discrimination based on Petitioner's housing

4   status.

5       Accordingly, it will be recommended that the claim be

6   dismissed without leave to amend.

7       In summary, it will be recommended that the petition be

8   dismissed without leave to amend.

9       IX.  <u>Certificate of Appealability</u>

10      Unless a circuit justice or judge issues a certificate of

11  appealability, an appeal may not be taken to the Court of Appeals

12  from the final order in a habeas proceeding in which the

13  detention complained of arises out of process issued by a state

14  court.  28 U.S.C. § 2253(c)(1)(A); <u>Miller-El v. Cockrell</u>, 537

15  U.S. 322, 336 (2003).  A certificate of appealability may issue

16  only if the applicant makes a substantial showing of the denial

17  of a constitutional right.  § 2253(c)(2).  Under this standard, a

18  petitioner must show that reasonable jurists could debate whether

19  the petition should have been resolved in a different manner or

20  that the issues presented were adequate to deserve encouragement

21  to proceed further.  <u>Miller-El v. Cockrell</u>, 537 U.S. at 336

22  (quoting <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000)).  A

23  certificate should issue if the Petitioner shows that jurists of

24  reason would find it debatable whether the petition states a

25  valid claim of the denial of a constitutional right and that

26  jurists of reason would find it debatable whether the district

27  court was correct in any procedural ruling.  <u>Slack v. McDaniel</u>,

28  529 U.S. 473, 483-84 (2000).

24

1    In determining this issue, a court conducts an overview of

2   the claims in the habeas petition, generally assesses their

3   merits, and determines whether the resolution was debatable among

4   jurists of reason or wrong.  Id.  It is necessary for an

5   applicant to show more than an absence of frivolity or the

6   existence of mere good faith; however, it is not necessary for an

7   applicant to show that the appeal will succeed.  Miller-El v.

8   Cockrell, 537 U.S. at 338.

9    A district court must issue or deny a certificate of

10  appealability when it enters a final order adverse to the

11  applicant.  Rule 11(a) of the Rules Governing Section 2254 Cases.

12   Here, it does not appear that reasonable jurists could

13  debate whether the petition should have been resolved in a

14  different manner.  Petitioner has not made a substantial showing

15  of the denial of a constitutional right.

16   Accordingly, the Court should decline to issue a certificate

17  of appealability.

18   X.  Recommendations

19   Accordingly, it is RECOMMENDED that:

20   1)  The petition be DISMISSED without leave to amend; and

21   2)  The Court DECLINE to issues a certificate of

22  appealability; and

23   3)  The Clerk be DIRECTED to close the case.

24   These findings and recommendations are submitted to the

25  United States District Court Judge assigned to the case, pursuant

26  to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of

27  the Local Rules of Practice for the United States District Court,

28  Eastern District of California.  Within thirty (30) days after

being served with a copy, any party may file written objections
with the Court and serve a copy on all parties.  Such a document
should be captioned "Objections to Magistrate Judge's Findings
and Recommendations."  Replies to the objections shall be served
and filed within fourteen (14) days (plus three (3) days if
served by mail) after service of the objections.  The Court will
then review the Magistrate Judge's ruling pursuant to 28 U.S.C.
§ 636 (b)(1)(C).  The parties are advised that failure to file
objections within the specified time may waive the right to
appeal the District Court's order.  Martinez v. Ylst, 951 F.2d
1153 (9th Cir. 1991).

     IT IS SO ORDERED.

**Dated:**   **August 9, 2012**          _____/s/ **Barbara A. McAuliffe**_____
                              UNITED STATES MAGISTRATE JUDGE